Good morning. May it please the Court. My name is Michelle Moretti, and I represent Appellant Adnan Alisic on his convictions. And with the Court's permission and in the interest of time, I would ask to address first the issue that I presented last in my brief, which concerns the 924C firearms charges. The judge denied defendants' motion for acquittal on those charges when counsel asserted that the evidence was insufficient to support the conviction for possession. It's noteworthy that 924C demands that a specific firearm be used in furtherance of a specific crime in order to trigger an additional five-year mandatory minimum penalty. Here in its brief, the government concedes at page 49 that Mr. Alisic did not use the firearm in furtherance of the robbery. The jury also found on its verdict slip that Mr. Alisic did not use the firearm in furtherance, but merely possessed it as some co-conspirator. The fact, if I may place this in context, is that the robbery had ended when the defendant had abandoned the green van in which the gun was discovered during further investigation at least a day after the robbery. I would suggest since the robbery and the pursuit had ended, as a matter of law, Mr. Alisic shouldn't have been held liable for its subsequent discovery. So in your view, it's insufficient that he told a co-conspirator that he would use the gun if, you know, somebody tried to shoot back at us, and that he would use the gun for protection? Well, Your Honor he didn't have to do that, but he said he would. And so why can't you reasonably infer from that that, in fact, he had that gun for that purpose? Your Honor, taking that statement in itself, I believe Arizona is a State that allows its citizens to carry weapons for protection. So if he is asserting his ---- Yes, but this happened to be for protection against somebody shooting at him in connection with a robbery. So one version of the testimony says, but the testimony is contradicted. As I stated in my brief, the co-defendants who claimed that he was going to use it to get away vacillated, retracted their statements. And I would ask the Court, at its leisure, to take a good look at the contradictory testimony, because that is the only test ---- only evidence at all, and I suggest it's a mere scintilla of evidence, not sufficient enough to bring the case before the jury to expose Mr. Illicich to the 5-year mandatory minimum sentence on the already draconian penalty he had received. And as an aside, I would also suggest if the Court is going to allow that, then perhaps this sets a precedent where we're infringing on anyone's Second Amendment rights, Second Amendment rights to bear arms for self-protection. It's a very, very tenuous connection. But moving on, congressional intent makes it appear that the statute is supposed to be applied narrowly, not broadly. We take that from the precedent set by the Kraus in line of cases cited in the brief, where the Kraus case says evidence that a gun merely possessed without proof that the weapon furthered an independent offense is insufficient to support one of these convictions. An in-furtherance of a drug offense under 924C requires proof that the defendant possessed the weapon to promote or facilitate the underlying crime. We've already discussed the scintilla of evidence statements offered by the evidence of the government, but let's discuss what wasn't found here. It's noteworthy that the crucial element of 924C, it turns on the intent of the defendant. It's important to note that when Elisage chose the instrumentality to effectuate the robbery, he did not reach for the pistol. He reached for an innocuous, relatively, can of pepper spray, one that we could buy over the counter, one that we often carry for self-protection in various situations. He chose the least harmful one. It was also his co-defendant waived an obviously toy gun, and the fact that it was an obviously toy or obvious toy. It didn't seem to seem to one of the witnesses to be obviously a fake gun. It, to one of the witnesses, they described it as what appeared to be an AK-47. To the investigating officer who found it, he described it clearly as a broken toy gun near the manhole cover, I believe, and I believe another witness described it as, if I recall correctly, as something that would appear, depending on where you looked at it, your perspective, to be fake or not. However, the jury's, in any case, the intent of Mr. Elisage was not to use this real weapon to effectuate the crime. It was to, and without minimizing the seriousness of the situation, it was to effectuate the crime with the least damaging. Ginsburg. The difficulty might be that you're looking at this from kind of the top down, as to you said, let's talk about what didn't, what evidence we don't have, whereas it seems to me on appeal, we're looking at it as, given the evidence that is there, you know, is it sufficient? Could no rational jury find, you know, make that determination? So I think we first have to get it in the right construct, and given that, it's difficult to say. The jury's finding, I think, is actually corroborative of the fact of the testimony that he talked about using this gun in connection with this crime. Now, he didn't actually use it, but he doesn't need to do that under 924C, does he? Well, his testimony, his statement was rather ambiguous, and I would go back to the concept that one is allowed to possess and carry a firearm for one's self-protection. Now, whether, and that's undeniable, that's absolute. Right, but when you do that, and you're about to commit a crime, and you say to somebody and, you know, if things don't go well, then we, you know, we have this gun, I'm going to, we want to use it, that's, that's crossing another line, isn't it? Forget the Second Amendment, that's just basically saying, in the middle of this crime, if I need the gun, I got it and I'm going to use it. Actually, I believe the, Mr. Elisich purportedly said, if we're going away and someone is trying to shoot at us, it's for self-defense. I agree that it is more incriminating, yet not enough in the context of the statute, which imposes such a draconian penalty. There must be more than someone's mere expression of a future intent, mere words, to, to trigger this application. Well, the difficulty is Congress used, you know, one might think if you used it, it makes sense, but unfortunately, they have two other words in the statute that we've had to continue to deal with over time, as you know, carries and possesses, which are pretty minimal. But I believe it must be always in furtherance of the crime. Correct. So what do we consider in furtherance of the crime? And again, Crowe said that goes back to the intent of the defendant. And as I've argued, the intent was demonstrated not just by the phrase that he uttered the night before, but what he actually did on the scene. What he said seems to me to be the absolute best indicator of what he meant. I mean, we very seldom have somebody actually admitting that I'm going to take this gun to use if we need it. I mean, that's remarkable. I don't know what better, what more forceful evidence one could expect. Well, Your Honor, again, not to belabor the point, but I would say that I would carry a gun to use it to protect myself if I was being threatened, and that would be perfectly legal. Okay. And just to reemphasize, without minimizing the seriousness, he may have simply legally possessed the weapon in a State which allows its citizens to carry it for self-protection. And it wasn't that argument made?  But I'm making it in response to my co-counsel. I guess I just meant at the trial, was it ever brought up that he's just a basic citizen of Arizona that has a gun? No, Your Honor, I don't believe that was ever brought up. How about the use of the fake gun? The use of the fake gun was similarly – I don't believe the use of the fake gun applies, but it was obviously a toy gun, brandished by a co-conspirator. And again, I don't believe it applies to – and I may be incorrect. Well, the fake gun can't support the 924C charge. 924C charge. It may be used to supply – to apply to the enhancements. Does the Court have further questions on this particular issue? I don't think so. If not, then I'll move again to the first issue that I've raised in the brief, which regards the four-level enhancements for a dangerous weapon. Not only did the Court clearly err in finding that pepper spray is per se a dangerous weapon, the Court failed to apply the appropriate standard of proof because the combination of the underlying enhancements had an extremely disproportionate effect on the sentence. I don't think it's more than double, was it? The – my co-counsel and I – the government and I disagree on the calculations, but it – I believe it more than doubled it. I may have to review those. But that is only one factor of six that determine whether a sentence is disproportionately enhanced. But first, I'd like to point out that we don't concede that there was no objection, because during sentencing the judge asked, now that the guidelines are advisory, I can find that the guideline – find facts that affect the guideline calculation, can't I? And trial counsel attempted to address the question by suggesting that the judge was being asked to find evidence of another crime and asked to make findings of fact that weren't in the jury's verdict. I would suggest that's sufficient to be construed as an objection to the standard of proof of a – finding the facts of a beyond a clear and preponderance of evidence versus a clear and convincing standard of evidence. But indeed, whether the object in fact was a dangerous weapon was not, or there was sufficient bodily injury, weren't facts that were even reached by the jury. And they were used to ratchet up the proposed sentence of the defendant dramatically. As to the proportionality test, U.S. Pipe cites six factors. No bright-line rule exists, but only – but no one factor is dispositive. And I would suggest that the increased offense level was equal to or greater than four, if I'm interpreting it correctly. That's one factor. The danger – the possession of the dangerous weapon per se as a dangerous weapon is usually an offense that – of itself that carries a separate sentence. So I would argue that it certainly did create an offense that – or a new offense  And finally, the bodily injury enhancement would usually create the offense of assault and battery. So here, the question of the extent of the bodily injury would normally be a question for the jury. But in both instances, the prosecutor's burden of proof was eliminated completely. I would suggest that is enough to find that the sentencing court should have used the higher standard for reviewing. But under either standard, the use of the pepper spray didn't constitute a dangerous weapon per se, nor did the gauge. Sotomayor, I just ask you, I'm trying to figure out what – if I agreed with you on that, and if the Court were to agree, how does that then figure into the enhancement given this fake AK-47? You've argued that there's sort of double counting in some way. So I'm just saying, let's say that you are correct and we take out the – not on the bodily injury, but that it's a deadly, you know, weapon in effect. What would that do to the calculations? I would suggest that the AK fake toy AK-7 has to be capable or perceived as being capable. And again, you have a conflicting testimony. Well, let's say that we disagreed with you on that. In other words, we agreed with you on the pepper spray is not a dangerous weapon, but disagreed with you on the AK-47. Would that still leave us in the same place? I couldn't concede that, Your Honor. The draconian – I'm not trying to get you to concede. I'm just trying to understand the numbers. Or is it that we just don't know? I think that's a question that deserves further scrutiny, because the presence of an obviously fake toy triggering such an exorbitant enhancement should be There's no requirement that the weapon be capable of causing injury. There was evidence which one could find that it was perceived as a real weapon. And there can't possibly be any double counting because the fake weapon can't support the 924C count. That's so – so what – what argument are you left with? I would be left with the assertion that that toy gun isn't sufficient to be counted under this particular enhancement. Okay. Okay. I have exceeded my time, I believe. Yes, indeed. Thank you. If the Court has no further questions, I would submit on the brief. Thank you. Thank you. Mr. Howe. Mr. Howe? Name's Hick. I'm the Chief Justice of the U.S. Department of Justice, and I'm here on behalf of the U.S. Department of Justice, and I'm here on behalf of the U.S. Department of Justice, he said to his co-conspirator, Bakir, that he had to shoot back after the robbery. Counsel doesn't find that testimony sufficiently credible, but the question for this court is whether any rational juror can find the elements of the offense, and the juror is specifically entitled to rely on a statement. So although, of course, the defendant didn't use the gun, he didn't have to, because he had the pepper spray and the AK-47 to infiltrate the robbery, and he got away. Counsel makes the United States v. D.K. has said that since that robbery continues through the pursuit, as I detailed in my brief, the pursuit was an ongoing, protracted event. So there is no question that there was sufficient evidence on the 924c crime. I'll move to the dangerous weapon harassment. The government maintains that the pepper spray is certainly capable of causing bodily injury and qualifies as a dangerous weapon. Apart from that, we have the fake AK-47. Counsel refers to this as a toy gun, and it may in fact have been a toy gun, but it was a very Flacka pointed the gun at him. It was realistic enough when Flacka brandished the AK-47 to scare people away. At the moment of the robbery, people ducked because it looked as if it were a real AK-47. Let me ask you the same question I asked Ms. Moretti. And in this case, if we disagreed with the government on the pepper spray, what effect, if any, would it have then on this dangerous weapon enhancement? Your Honor, there's no evidence in the record that shows that the court viewed the enhancement cumulatively. So to speak, he had the pepper spray and he had the AK-47, so that weighs more in the that the pepper spray or the fake AK-47 does satisfy that enhancement. So even if this court finds that pepper spray, it's not capable of causing bodily injury. And I'm sure the guard would disagree with the court if this court came to that conclusion. Even if this court did come to that conclusion, the fake AK-47 satisfies that enhancement. So it's clear that the defendant used two dangerous weapons the pepper spray, the fake AK-47. It's clear that the pepper spray caused bodily injury. The government not only presented the testimony of all about the medical problems caused by the assault of the pepper spray, the government submitted scientific reports at sentencing detailing the dangerous effects of It's also clear that the defendant recklessly fled from the police and caused danger to others. I won't discuss that issue any further unless this court has any questions about it. And if there are no further questions, I'll ask that this court affirm the defendant's convictions and sentences. Thank you. Okay, thank you, Mr. Powell. Thank you, Ms. Minetti. And the matter just argued will be submitted.
judges: Hug, Rymer, McKeown